## No. 14,706.

### Medberry *v.* The People.
(108 P. [2d] 243)

Decided December 2, 1940.

Mr. JOHN E. O'BRIEN, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. McAULIFFE, Assistant, Mr. WILLIAM B. PAYNTER, Mr. FRANK D. ALLEN, for the people.

Mr. RAYMOND L. SAUTER, amicus curiae.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

PLAINTIFF in error, defendant below and so hereinafter designated, was charged in an information filed March 10, 1939, in the district court of Washington

county, with murder in the first degree. In due course he and his family employed T. E. Munson, and Samuel Chutkow, members of the bar of the Thirteenth Judicial District of which Washington county forms a part, to represent him on the trial on such charge, to which a plea of "not guilty" was entered. The trial opened on June 15, 1939, and was concluded on the 24th. On the latter date the jury returned its verdict finding defendant guilty of murder in the first degree and, in the exercise of its discretion to fix the penalty therefor at either death or life imprisonment, decreed the latter. Motion for new trial, based on thirty-five alleged grounds, was filed July 22, and overruled July 31, 1939, following which and upon the same date, in accordance with the verdict, judgment was pronounced sentencing defendant to life imprisonment in the penitentiary, where he has since been incarcerated.

In October, 1939, John E. O'Brien, a member of the bar of Wisconsin, residing in Fond du Lac in that state, which also is the place of residence of the parents of defendant, and his former abode, came to Colorado in the interest of defendant, under a retainer fee paid by the parents. Thereafter on October 13, 1939, Messrs. Munson and Chutkow withdrew their appearance as attorneys for defendant and, coincidentally, upon the motion of Mr. William B. Paynter, district attorney of said judicial district, the trial court permitted Mr. O'Brien to appear as counsel in this case. On the day following, Mr. O'Brien, alleging indigency of defendant, petitioned the trial court to appoint Colorado counsel to conduct further proceedings in the district court, and, if need be, in the Supreme Court, and, in addition, presented what was designated as a supplemental motion for new trial or, in the alternative, for a writ of error coram nobis. The sequent motion was overruled and later the plea for appointment of counsel was denied by the trial court. Following these rulings defendant, through Mr. O'Brien, requested the court to order the preparation of a tran-

script of the evidence and proceedings in the trial court at public expense to enable defendant to procure a review of the judgment of conviction. This motion also was denied. Thereafter, upon the suggestion of the indigency of defendant, we permitted him to docket his proceeding in error in this court without payment of the fee therefor and to submit the case on typewritten abstract and briefs. The writ of error was issued on December 18, 1939. Defendant's record on error consists of excerpts from the records of the case filed in the office of the clerk of the district court and a transcript of the various pleadings and proceedings subsequent to the appearance of Mr. O'Brien in the case, together with copies of letters passing between court and counsel and newspaper accounts of the trial. In view of this unusual state of the record, the attorney general moved to strike what he terms the "so-called" abstract of record and the "so-called" bill of exceptions and asked that the proceeding in error be dismissed. Notwithstanding that a record on error similar to that here presented probably never has been filed in this or any other appellate court, in consideration of defendant's vehement assertions that injustice would appear therefrom and the professed unfamiliarity of his Wisconsin counsel with the practice and procedure in Colorado, we denied the motion with leave to renew the same on final argument. All briefs on the merits have been filed and the case orally argued. Upon the basis of the initial considerations above expressed, we deem it advisable to examine the errors assigned although it may be that the motions to strike and dismiss may properly have been sustained.

The principal legal controversy centers upon the refusal of the trial court to grant defendant's supplemental motion for a new trial and in denying a writ of error coram nobis sought in the alternative in the same petition and upon the same grounds. Defendant contends that the granting of the relief sought was imperative: First, because Mr. Chutkow, one of the trial attorneys

for defendant, was disqualified to act as such by reason of a conflict of interest, he being at the time of the trial the county attorney of Washington county, wherein the trial was held. Second, because upon the trial defendant suppressed certain facts constituting a defense available to him, as the result of advice by said attorney, to the effect that their disclosure might result in a verdict imposing the death penalty, and that such suppression, so arising through the alleged coercion of his said attorney, worked a fraud upon the trial court which resulted in the verdict of murder in the first degree and the judgment of conviction and sentence based thereon.

The first contention is without semblance of merit either as a basis of error or as a ground for charging the attorney involved with a transgression of professional ethics. Under the statutes of Colorado a county attorney is employed primarily as the legal advisor of the county commissioners in whose discretion reposes the power of appointment. '35 C.S.A., c. 45, §64. In certain matters he advises other county administrative officers, appears for the county in cases involving dependent, neglected and delinquent children, in lunacy inquests and, when directed by the county commissioners, in civil litigation to which the county is a party or in which it is interested. He has no part whatsoever in the initiation or conduct of ordinary criminal proceedings which, in Colorado, are prosecuted by the district attorney in the name of the people of the state and not of the county; hence, in defending one charged with crime, at least where the county has no interest beyond that ordinarily attaining, a county attorney does not represent. conflicting interests nor serve two masters. As disclosing a special financial interest in the county, defendant argues that the inhabitants thereof were vitally concerned in the expense incident to the proceeding at bar. Such a situation is attendant in every criminal case. While we can conceive how a district attorney might justly complain if funds for a criminal prosecution were

curtailed by the county commissioners upon the advice of the county attorney, we are unable to understand how the defendant in such case could reasonably assert that his rights had been prejudiced by reason of the enforced fiscal deficiencies of his adversary. It further appears that previous to the employment of Mr. Chutkow, defendant and his parents were advised and well knew that he was county attorney of Washington county, which circumstance, in the view of the trial court, was one of the factors which induced his retention as counsel for the defense. Such prior knowledge, coupled with the subsequent employment, might preclude objections from defendant on this ground in any event. See, section 6, Colorado Canons of Ethics.

We now pass to a consideration of the second contention above specified. Technically, if the anomalous petition under examination, labelled as it is in the alternative, in reality is a supplemental motion for new trial, it may be doubted whether the trial court had jurisdiction to entertain it, since seemingly it was not filed within the time allowed therefor. See, *Turley v. People,* 73 Colo. 518, 216 Pac. 536. However this may be, and without reference to the duality of title, it seems apparent that the principal purpose of the motion was to procure the issuance of a writ of error coram nobis and thus bring to the attention of the trial court an alleged error of fact because of which, defendant says, error in the challenged judgment would appear. In *Grandbouche v. People,* 104 Colo. 175, 89 P. (2d) 577, we said the writ of error coram nobis "is almost obsolete, and has been abolished by statute in some jurisdictions. Its purpose now is attained by the filing of a motion to set aside the judgment." In *Mandell v. People,* 76 Colo. 296, 231 Pac. 199, we expressly declined to definitely decide whether, in view of our code provisions in civil actions and our statutory procedure in criminal cases, this common-law writ or a motion in the nature thereof was still available in Colorado. The opinion therein states: "Even if we should hold that such rem-

edy exists in Colorado, * * * it would avail the defendant nothing unless his application or motion for relief states facts which bring the case within its scope." It is our conclusion that we need go no further in the case at bar. In jurisdictions where the procedure is permissible "The rule is that the extraordinary relief afforded by the proceeding in the nature of a writ coram nobis will not be granted in a criminal case after trial and conviction, except where it clearly appears that the petitioner had a valid defense in the facts of the case, but which, without negligence on his part, was not made because of duress, fraud, or excusable mistake; or that he was prevented from asserting and enjoying some legal right through duress, or fraud, or excusable mistake, these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment in question." *Wheeler v. State,* 158 Ind. 687, 696, 63 N.E. 975.

 In approaching the study of the question presented we deem it necessary to briefly detail the circumstances surrounding the homicide. The victim, to whom we hereinafter refer as deceased, was a salesman, thirty-two years of age, about five feet eight inches in height, who, because of his poor health, had been transferred to Colorado by his employer, a nationally known soap manufacturer. Late in the afternoon of March 10, 1939, in the course of a routine sales trip, driving an automobile provided by his employer, deceased arrived in Sedgwick, Colorado. On the outskirts of this town he "picked up" the defendant, at his solicitation, it appearing that he was "hitch-hiking" from Fond du Lac, Wisconsin, to Craig, Colorado, which is several hundred miles westerly from Sedgwick. The defendant, an unusually strong young man, at the time carried concealed in his pocket, a 25 caliber, Spanish automatic pistol. Traveling on Highway No. 6, the two drove through Sterling, and, about five o'clock p.m. stopped at Merino, some fifteen miles west of Sterling, for gasoline. From

there they proceeded westerly to the junction of Highway No. 6 with Highway No. 34 at Brush, near which point the car and the two occupants were observed at about 5:45 o'clock p.m. At this junction they turned easterly toward Akron, where deceased was to make a business call. At 7:15 o'clock p.m., defendant, alone in the car and driving westwardly in the direction of Denver, stopped at Brush for gasoline, from whence he proceeded to Denver where he abandoned the car in the suburbs at about 9:30 o'clock p.m. That night, due to conduct from which their suspicions were aroused, he was apprehended by Denver police when a search of his person revealed his possession of a 25 caliber pistol. On the morning of March 13—the homicide not yet having been reported — defendant was charged with carrying concealed weapons, given a suspended sentence and ordered to leave Denver, which he did. On the same day the body of deceased was discovered in the garage of the Davis schoolhouse, about four miles west of Akron and between that city and Brush. An autopsy disclosed that death had been caused by a small caliber bullet which had entered the head behind the left ear and lodged against the frontal bone above the right eye. Decedent's left arm had been wrenched out of the socket, the left side of his body was badly bruised and there was physical evidence that he had been struck on the head. Although the circumstances would indicate that previously he was possessed of such, no money was found on the body of deceased. After leaving Denver defendant proceeded to the western part of Colorado and then returned to Fond du Lac, Wisconsin, where he was arrested on March 18 by local officers at the request of Colorado authorities. According to their testimony he severally admitted to five peace officers in Fond du Lac, and to the sheriffs of Washington and Logan counties, Colorado, that he had shot and killed the deceased. At the trial the principal defense was that the shooting was accidental. The jury was fully instructed with respect

thereto and also on the question of self-defense. Concerning the happenings immediately preceding the fatal shooting, defendant testified at the trial, in substance, that as the automobile approached the Davis school, he driving, deceased informed him that he would have to get out of the car before they reached Akron since the company rules forbade salesmen carrying "hitchhikers" in company cars, and suggested that defendant wait at the schoolhouse for a car headed west. Defendant drove off the road to the schoolhouse, which was found to be locked. He said the two then examined the adjacent garage and, following defendant's protest at being left there, a scuffle ensued during which the deceased got hold of defendant's pistol, which was accidentally discharged, the lethal injury being thus inflicted during the struggle for possession of the weapon.

In the affidavit supporting his motion for a writ of error coram nobis, defendant asserts that in so far as it pertains to the *cause* of the struggle preceding the fatal shot his testimony at the trial was false and that in truth the contest in the garage was provoked by the renewal of a previously made indecent proposal by the deceased, coupled with an indecent assault there made, which facts, it is said, had they been disclosed at the trial would have resulted in a verdict other than conviction. As the purported basis of duress and fraud, defendant in his affidavit states that he informed Mr. Chutkow of such alleged circumstances and the latter advised him that the mention of such "might result in the infliction of the death penalty" and accordingly defendant withheld the same when he testified. It is not alleged that defendant's testimony could be corroborated by any witness or circumstance. It is self-evident, as an elementary matter, that to justify granting the extraordinary relief sought, the substantive facts, upon which reliance is placed, must be true. From the circumstance that the people filed no affidavit categorically traversing that of the defendant, he assumes that the verity of its state-

ments in this connection are conclusively established. Neither logically nor legally is such assumption warranted. In an application for a writ of error coram nobis the court is not bound to accept as true the statements of an accused in support thereof but should consider all the facts properly within its cognizance and act accordingly. *People v. Perez,* 9 Cal. App. 265, 98 Pac. 870, 16 C.J., p. 1327, §3118. "The granting of the writ is not a matter of right, but it is issued only on a showing of cause, and then it is within the discretion of the court whether, on the affidavits presented, it should be allowed." *Grandbouche v. People, supra,* quoting from 34 C.J. 399, 400, §615. If the rule was otherwise any convicted felon could assure himself of a new trial by the simple expedient of making an affidavit to the effect that some matter of defense, concerning which he alone could testify, had not been aired in the previous trial. In the instant case we are not prepared to say that the trial court abused its discretion in refusing to believe the new version of facts set out in the defendant's affidavit. If the transactions now alleged had in truth happened, it seems inconceivable that the defendant would not have mentioned the same to Mr. Munson, his other counsel, at one of their several private pre-trial conferences, or during the course of the trial in which Mr. Munson participated as fully as did Mr. Chutkow, yet he states in his affidavit that he did not so do. Further reasons for doubting the verity of the affidavit arise from the circumstance that following his arrest by police officers in Fond du Lac eight days after the killing, defendant stated to them, as they testified, and which testimony he did not deny, that deceased had made no indecent suggestions or proposals of any character to him and that the sole cause of the quarrel was that deceased had insisted upon defendant leaving the car. The affidavit of the sheriff of Washington county contains the statement that in his extended investigation of the case he never had received any credible information which in any way

supported or tended to support the new matters asserted. We also infer from the remarks of the trial court upon the occasion of his overruling this motion, that the latest story of defendant is at variance with certain physical facts and incidents attendant upon the homicide. In the light of these patent inconsistencies and discrepancies, Mr. Chutkow, even if informed by defendant of his version of the alleged pornographic events preceding the fatal struggle, well might have doubted defendant's candor in this connection and so consistently advised as defendant alleges. Indeed, the very circumstances upon which defendant relies to corroborate his charge that Mr. Chutkow previously *knew* of defendant's contention, suggest the ephemeral character of the so-called defense. Without quoting from the communication of the latter, defendant sets out the following excerpt from a letter written by Mr. Chutkow to counsel for defendant in Wisconsin: "There is nothing to the rumor you mention in your letter and personally I would be reluctant to have any testimony like this come in because I think it would prove a boomerang." If defendant at that time unequivocally claimed that indecent proposals had been made to him, it is difficult to understand why counsel in Wisconsin would have been writing to Mr. Chutkow about a "rumor." This letter was written more than a week before the trial commenced. Further, as appears from the affidavits of defendant's parents, they were told by Mr. Chutkow five days before the beginning of trial that as a result of his investigation he could not and would not bring up a morals charge as a defense in the case. Unless it be considered that zeal in the interest of defendant has overswayed the calm judgment of defendant's present counsel, which we prefer to believe, the unwarranted personal attack upon Mr. Chutkow, and, inferentially, upon Mr. Munson and the District Attorney, contained in defendant's briefs, properly might not be condoned. The district judge expressed the opinion that defendant had been unusually well represented at

the trial and we have no reason to question this observation.

Except as to the cause thereof, there is little variance between the defendant's affidavit and his testimony at the trial describing the fatal encounter. Thus it would seem certain that no *new* defense—a prerequisite to the granting of the extraordinary relief sought—is proffered by the application therefor. Such is well demonstrated by the following comments of the trial court which we quote with approval: "The alleged defense now sought to be presented is in fact no different than the defense already presented, relied upon and upon which defendant was convicted, namely, the defense of accidental shooting. * * * the grounds therein appear to be accidental shooting, but brought about by a different state of facts producing a quarrel which led to an encounter. If the shooting was accidental, it was the result of an encounter brought about by a certain state of facts. The alleged new defense on which the supplemental proceedings are predicated does not change the fact that the shooting was accidental, that it was brought about as the result of a scuffle or conflict in the garage, but the defendant does allege and pretends that scuffle originated as a result of a state of facts bringing about the scuffle. No self-defense appears in the supplementary proceedings. It is still accidental shooting." For the reasons indicated we think it apparent that the trial court was well within its discretion in concluding that the defendant failed to state facts sufficient to bring his case within the scope of the remedy sought and in denying the motion under consideration.

■■ It is the contention of defendant that the trial court erred in refusing to appoint counsel to represent him in the supplemental matters in the district court and to prosecute proceedings in error in this court. In a sense, the ruling of which complaint is made in this case, is interlocutory in character and not the subject of appellate review; but in any event no occasion arises for

the determination of the extent of the power conferred upon the district court, in this connection, under section 502, chapter 48, '35 C.S.A., relating to the appointment of counsel for indigents, since in the case at bar defendant continuously has been represented by counsel of his own choosing from a time shortly after his arrest to the present moment. Nor is it necessary for us to deliberate hypothetically upon the inherent authority of the district court — we having no statute on the subject — to order a transcript of the record and testimony at the expense of the county, thereby aiding defendant in securing a review of the judgment of conviction on the allegation of his indigency, since, even in jurisdictions where by express statute or otherwise the power is recognized, its exercise reposes in the discretion of the court, and no abuse of such discretion, in our opinion, is here disclosed. See note and citations of authority, 100 A.L.R. 328.

Finally, upon the theory that the burden of proof was thereby shifted to defendant, it is asserted that the court erred in giving Instruction No. 8. Technically our critical study of this assignment of error is precluded by the circumstance that no bill of exceptions covering the trial proper has been filed. See, *Pettit v. People,* 24 Colo. 517, 52 Pac. 676; *LaPlant v. Axelson,* 72 Colo. 95, 209 Pac. 637. However, in *Babcock v. People,* 13 Colo. 515, 22 Pac. 817, where, as here, the jury was instructed on self-defense, the giving of the same instruction, which is a precise copy of section 50, chapter 48, '35 C.S.A., was declared not to be error. See, also, *Kent v. People,* 8 Colo. 563, 9 Pac. 852, and *Prince v. United States,* 3 Okla. Cr. 700, 109 Pac. 241.

The judgment herein presented for review is affirmed.

Mr. Justice Bakke, Mr. Justice Otto Bock and Mr. Justice Burke concur. Mr. Justice Francis E. Bouck dissents. Mr. Chief Justice Hilliard and Mr. Justice Young not participating.