Petition of Ellsworth MEDBERRY,
Petitioner,

v.

Wayne K. PATTERSON, Warden of The
Colorado State Reformatory and Harry
C. Tinsley, Warden of The Colorado
State Penitentiary, Respondents.

Civ. A. No. 6303.

United States District Court
D. Colorado.

April 14, 1959.

Samuel D. Menin, Denver, Colo., for petitioner.

Duke W. Dunbar, Atty. Gen., Frank E. Hickey, Deputy Atty. Gen., and John W. Patterson, Asst. Atty. Gen., for respondents.

ARRAJ, District Judge.

This matter having come on to be heard before the Court on the 16th day of March, 1959, involves the petition of Ellsworth Medberry for a writ of habeas corpus on the ground that his detention in the Colorado State Reformatory [1] is unlawful in that after a trial on a charge of first degree murder and conviction of life imprisonment petitioner's rights under the Due Process and Equal Protection Clauses of the Fourteenth Amend-

---

1. Petitioner was originally confined in the Colorado State Penitentiary. On January 7, 1955, under executive order of the Governor of Colorado he was transferred from the penitentiary to the Colorado State Reformatory.

ment to the United States Constitution were violated because he was denied an adequate appellate review and adequate legal representation. For reasons hereafter mentioned, this Court is of the opinion that the petition should be denied.

The events leading up to the trial and conviction are reported in Medberry v. People, 1940, 107 Colo. 15, 108 P.2d 243. These events will be summarized here. Petitioner was "hitch-hiking" from Wisconsin to Colorado in March 1939. He carried a .25 caliber automatic pistol. The victim "picked up" petitioner near Sedgwick, Colorado. They drove to a schoolhouse which was about four miles from Akron, Colorado. They stopped at this schoolhouse some time in the early evening of March 10, 1939. While there the victim was fatally injured by a bullet from petitioner's automatic. Subsequently, petitioner was arrested in Fond du Lac, Wisconsin, and returned to Colorado.

On March 18, 1939, an Information was filed in the District Court of Washington County, Colorado, charging petitioner with first degree murder. On April 10, 1939, Messrs. Munson and Chutkow, members of the Colorado Bar, entered their appearance as attorneys for petitioner. Arraignment was held on the same day, at which time the petitioner plead not guilty. The trial opened on June 15, 1939, and ended on June 24, 1939. The jury returned a verdict of guilty. On July 22, 1939, a motion for new trial was filed. The motion was overruled on July 31, 1939. Petitioner was given a life sentence on the same day. No writ of error was sued out of these proceedings.

On October 13, 1939, Mr. John E. O'Brien of Fond du Lac, Wisconsin, a member of the Wisconsin Bar, but not of the Colorado Bar, was allowed to enter his appearance on behalf of petitioner. On the same day, Messrs. Munson and Chutkow withdrew their appearance.

On October 14, 1939, petitioner filed a motion for appointment of counsel on the grounds that he was indigent and that counsel familiar with Colorado criminal procedure was essential to prosecute further proceedings in the trial court, and, if necessary, in the Colorado Supreme Court. This motion was denied on October 14, 1939. A supplemental motion for the appointment of counsel was filed on October 23, 1939, which motion was overruled on October 26, 1939.[2]

On October 14, 1939, petitioner had filed a supplemental motion for a new trial or a writ of error coram nobis. This motion was denied on the same day.

On November 22, 1939, petitioner moved the court, on the grounds of indigency, for a free transcript of the proceedings subsequent to sentencing,[3] i. e. the proceedings with respect to the motion for the appointment of counsel and the supplemental motion for a new trial or a writ of error coram nobis.

2. Petitioner's family paid Messrs. Munson and Chutkow $2,500. Something in the neighborhood of $500 was paid to Mr. O'Brien. However, in affidavits filed in the trial court on October 14, 1939, and October 25, 1939, petitioner and his parents claimed to be without any further funds. No finding was made on these claims. In refusing to appoint counsel, the trial court, among other things, said: " * * * the defendant cannot now after rendering himself or rendering his parents destitute of money or property with which to further finance his appeal to the Supreme Court, be heard in his application for the appointment of counsel. He and his parents seem to have rendered themselves unfortunately destitute financially, but not until in the neighborhood of $3,000.00 had been previously paid for legal services."

3. There appears in the record no formal motion to the trial court for a free transcript of the trial proceedings. However, the record indicates that informal requests for a free transcript of the trial proceedings were made to the trial court and to the Board of County Commissioners. Futhermore, in the petitioner's brief before the Colorado Supreme Court on the writ of error, a request was made for a free transcript.

This motion was denied on December 7, 1939.[4]

A writ of error was issued on December 18, 1939. The Colorado Supreme Court allowed petitioner to docket his case without the payment of the docket fees, and also permitted petitioner to file typewritten abstracts and briefs.[5] Petitioner's bill of exceptions consisted of the District Court's Clerk's transcript, the certified transcript of the supplemental proceedings, letters between Mr. O'Brien and the Judge of the District Court and newspaper accounts of the trial. The Attorney General of the State of Colorado moved the trial court to strike the bill of exceptions, and the motion was granted. But the Colorado Supreme Court allowed the bill of exceptions to stand. On December 2, 1949, the Colorado Supreme Court affirmed the conviction. Medberry v. People, 1940, 107 Colo. 15, 108 P.2d 243.[6] A writ of certiorari from the United States Supreme Court was not sought.

No further court action was instituted until 1958, when petitioner applied for a writ of habeas corpus from this Court. On August 13, 1958, the application was denied on the ground that petitioner had not exhausted his state remedies. On September 9, 1958, an original petition for habeas corpus was filed in the Colorado Supreme Court. The grounds for the petition were the same as those now before this Court. The petition was denied on September 18, 1958, without written opinion. Petition for rehearing was denied on October 14, 1958, also without written opinion. A petition for a writ of certiorari from the United States Supreme Court was filed on November 28, 1958. This petition was de-

nied on January 12, 1959, 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304. On February 4, 1959, petitioner filed his present petition in this Court. A writ of habeas corpus was issued on February 5, 1959, directing that petitioner be produced for hearing.

█ Before the merits of petitioner's claims may be considered, it must first be determined whether petitioner has exhausted his state remedies, whether any adequate state remedy is available or whether available state remedies would be ineffective. 28 U.S.C.A. § 2254. However, before considering this matter, one of petitioner's claims may be disposed of on the face of the petition—the claim that he did not have adequate legal representation.

█ It appears from the face of the petition, and the exhibits attached thereto, that petitioner was represented by counsel in all court proceedings from the day he was arraigned to the present date. His contention is that during the period from October 13, 1939, to December 2, 1940, the period in which petitioner was represented by Mr. O'Brien, who was not familiar with Colorado criminal procedure, he did not have adequate legal representation and that the failure of the Colorado courts to appoint local counsel on grounds of petitioner's indigency violated his constitutional rights. But the fact remains that during that period petitioner was represented by counsel; therefore, in essence, petitioner's claim is that he was denied effective assistance of counsel. Although there is doubt whether petitioner was in fact indigent at that time,[7] the petition must fail, even on the assumption of indigency, since it

---

4. A transcript of the supplemental proceedings was provided by Mr. O'Brien, but it appears that Mr. O'Brien paid the cost of $30 out of his own funds.

5. The Colorado Supreme Court allowed this upon the suggestion of indigency, Medberry v. People, 1940, 107 Colo. 15, 18, 108 P.2d 243, no finding of indigency having been made.

6. Five issues were presented and decided by the Colorado Supreme Court. Of these four related to matters raised in the supplemental proceedings. Other alleged errors committed during the trial were not argued; petitioner contending that the lack of a transcript of the trial proceedings had precluded him from doing so.

7. See footnotes 2 and 3 supra.

does not allege with particularity in what way the acts or the failure to act of Mr. O'Brien prejudiced the petitioner; [8] therefore, that part of the petition relating to this claim is dismissed.

In relation to his claim that he was not provided a free transcript, respondents contend that petitioner has not exhausted his state remedies because of one or both of the following reasons: (1) that petitioner failed to seek a writ of certiorari from the United States Supreme Court to the Colorado Supreme Court in relation to the latter court's affirmance of Medberry's conviction; (2) that petitioner still has an effective remedy in the state courts by way of petition for a writ of habeas corpus to a Colorado District Court.

There is no doubt that in ordinary cases an application for a writ of certiorari from the United States Supreme Court is a "state remedy" under 28 U.S.C.A. § 2254. Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L. Ed. 761; Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572. It is also clear that when a state offers alternative methods, or more than one method by which to attack a conviction on the ground that a constitutional right has been violated, only one method must be prosecuted—including only one application for a writ of certiorari from the United States Supreme Court. Brown v. Allen, 1953, 344 U.S. 443, 447, 486, 73 S.Ct. 397, 97 L.Ed. 469; Wade v. Mayo, 1948, 334 U.S. 672, 68 S.Ct. 1270, 92 L. Ed. 1647; United States ex rel. Alvarez v. Murphy, 2 Cir., 1957, 246 F.2d 871; Cranor v. Gonzales, 9 Cir., 1955, 226 F.2d 83, certiorari denied 350 U.S. 935, 76 S. Ct. 307, 100 L.Ed. 816; United States ex rel. Master v. Baldi, 3 Cir., 1952, 198 F. 2d 113; Bacom v. Sullivan, 5 Cir., 1952, 194 F.2d 166, certiorari denied 345 U.S. 910, 73 S.Ct. 651, 97 L.Ed. 1345. Therefore, to hold that petitioner failed to exhaust his state remedies by not requesting a writ of certiorari from the United States Supreme Court to the Colorado Supreme Court in relation to the Colorado Supreme Court's decision on December 2, 1940, would require a finding: (1) that petitioner waived any constitutional right he might have had to a free transcript by not seeking his final "state remedy" (a writ of certiorari) at the time he prosecuted his direct appeal to the Colorado Supreme Court, or (2) that Colorado offers no collateral method of attack and that since certiorari from the Colorado Supreme Court's decision in 1940 would be the only method by which the United States Supreme Court could have reviewed the state court's decision on the merits, failure to have requested certiorari at that time is also a failure to have exhausted state remedies.

There is no doubt that one convicted of a crime may waive a constitutional right by failing to raise the ques-

---

8. In Lunce v. Dowd, 7 Cir., 1958, 261 F.2d 351, 353–354 the Court says:

"We are not unmindful of the strict test to be applied to unbridled claims of incompetence brought by prisoners against their trial counsel after incarceration for crimes has given time for bitter reflection. To allow complaints of mistake in judgment, error in trial strategy or misconception of the law to be labeled as "incompetence" would be to open the doors to every prisoner to charge his conviction to errors of counsel. 'Petitions challenging the competency of counsel, especially years after the conviction, must clearly allege such a factual situation which if established by competent evidence would show *the representation of counsel was such as to reduce the trial to a farce or a sham.*

Otherwise, they should be dismissed.' (Our emphasis.) United States ex rel. Feeley v. Ragen, 7 Cir., 1948, 166 F.2d 976, 981."

And in Golpin v. United States, 6 Cir., 1958, 252 F.2d 685, 687, it is stated:

"A cognizable issue as to effective assistance of counsel is not tendered by mere general criticism of an attorney's conduct of the defense. In order to present a colorable showing of lack of effective assistance of counsel, a defendant must descend to particulars and allege what the attorney did or failed to do that constituted malrepresentation. See: Taylor v. United States, 9 Cir., 1956, 238 F.2d 409, 413–414; Adams v. United States, 1955, 95 U.S.App.D.C. 354, 222 F.2d 45, 47."

tion when orderly procedure requires that it be put in issue. Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Ex parte Spencer, 1913, 228 U.S. 652, 33 S.Ct. 709, 57 L.Ed. 1010. But it is also well settled that a constitutional right cannot be waived when the accused did not know or could not have known that one of his constitutional rights was being violated. And it is a matter of fact that no one knew or could have known in 1940 [9] that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires a state to furnish a free transcript to indigent defendants when that is the only method by which they may secure an adequate appellate review and when the state allows review as a matter of right.[10]

"It would be an easy answer that a claim that was not duly asserted —as was the timely claim by these petitioners—cannot be asserted now. The answer is too easy. Candor compels acknowledgement that the decision rendered today is a new

ruling. Candor compels the further acknowledgement that it would not be unreasonable for all indigent defendants, now incarcerated, who at the time were unable to pay for transcripts of proceedings in trial court, to urge that they were justified in assuming that such a restriction upon criminal appeals in Illinois was presumably a valid exercise of the State's power at the time when they suffered its consequences. Therefore it could well be claimed that thereby any conscious waiver of a constitutional right is negatived." Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 25, 76 S.Ct. 585, 593, 100 L.Ed. 891 (concurring opinion).

And that one convicted by a state prior to the decision in Griffin v. People of State of Illinois will not be held to have waived his right to a free transcript seems to be clearly indicated in Eskridge v. Washington State Board of Prison Terms and Paroles, 1958, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 and Ross

9. For a survey of the law in 1940 see the annotation in 100 A.L.R. 321, 328.

10. It would seem that Medberry was entitled, under Colorado law, to a writ of error from his conviction in 1939 as a matter of right. The pertinent Colorado law in 1939 was this:

"C.R.S.1953, 39-7-27. Writs of error in all criminal cases not capital shall be considered as writs of rights, and issue of course * * *."

"C.R.S.1953, 39-7-24. The party aggrieved by manifest and material error appearing of record in any capital prosecution by indictment, may be relieved by writ of error upon complying with the following terms: The party complaining that error has been committed shall obtain a certified copy of the record from the clerk, and from the judge of the district court, or from the person who acted as prosecuting attorney on the trial, a certificate expressive of an opinion that said record contains a full and true history of the proceedings on said trial, which record, together with the assignment of the errors relied on for 'the reversal of the judgment, shall be presented to the supreme court, or to one of the justices thereof, in vacation. If after inspecting such transcript the court

or justice aforesaid shall be of opinion that there is reasonable cause for allowing a writ of error, the same shall be granted by order indorsed on the back of said transcript. *The allowance of such writ of error shall be sufficient authority to the clerk of the supreme court to issue a supersedeas to stay the execution of the sentence of death,* but not the discharge of the prisoner from jail, where any judgment, the execution whereof has been stayed by writ of error as aforesaid, shall be affirmed, and the supreme court, by order, shall fix the time when the original sentence of death shall be executed, a copy of which order shall be sufficient authority to the sheriff for the execution of any person therein mentioned, at the time specified." (Emphasis added.)

These two sections taken together seem to imply that "capital cases" mean cases in which the death penalty has been imposed, and that, therefore, Medberry had an absolute right to a writ of error. Whether or not this was the law in Colorado in 1939 is not before this Court at this time, however. Cf. In re Patterson, 1957, 136 Colo. 401, 402, 317 P.2d 1041.

v. Schneckloth, 1958, 357 U.S. 575, 78 S.Ct. 1387, 2 L.Ed.2d 1547. See also Wade v. Mayo, 1948, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647.

█ There is no merit to the point that Colorado may offer no collateral method of attack and that a request for certiorari was a necessary procedure after the Colorado Supreme Court denied a free transcript on direct appeal. In 1940, it was a state matter as to whether a free transcript would be provided an indigent defendant.[11] Therefore, the Colorado Supreme Court's denial of petitioner's request for a free transcript rested on state grounds. Thus, if certiorari had been requested, the United States Supreme Court in all probability would have denied the application on the ground that it had no jurisdiction to review the state high court decision. Wade v. Mayo, 1948, 334 U.S. 672, 68 S. Ct. 1270, 92 L.Ed. 1647; White v. Ragen, 1945, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348. And if today, in view of the Eskridge decision, supra, the State of Colorado offers no corrective process, this Court will have jurisdiction to determine the merits of Medberry's claim notwithstanding the fact that he did not seek certiorari in 1940. Wade v. Mayo and White v. Ragen, supra. Whether or not Colorado does have available corrective process will be discussed now.

Although it is not clear whether habeas corpus as a corrective remedy for this type of alleged violation of a constitutional right is available in Colorado,[12] both the Colorado Supreme Court and the Colorado District Court have jurisdiction to entertain petitions for writs of habeas corpus.[13] The petitioner, Medberry, sought to invoke the original jurisdiction of the Colorado Supreme Court. That Court denied the petition with the following memorandum opinion:

"On consideration of the petition of Ellsworth Medberry for a writ of habeas corpus herein it is this day ordered that the same be, and it hereby is, denied."

The petition for rehearing was also denied with a memorandum opinion:

"The court having considered the motion of the petitioner for rehearing in said cause, and being sufficiently advised in the premises, it is this day ordered that said motion be, and the same hereby is, denied."

It is now incumbent upon this Court to interpret and endeavor to decide why the Colorado Supreme Court denied Medberry's petition before it can either exercise or decline to exercise jurisdiction.[14] It is, of course, impossible to determine with accuracy the reason; at best it is a matter of conjecture. It may well be that the Colorado Supreme Court decided

---

11. See footnote 9, supra.

12. In Freeman v. Tinsley, 1957, 135 Colo. 62, 308 P.2d 220, the Colorado Supreme Court seemed to limit the grounds upon which habeas corpus would be available. At page 67 of 135 Colo., at page 222 of 308 P.2d the Court stated:

"'It may be stated as a general rule that in a habeas corpus action by a person convicted of a crime the sole question for consideration is whether the petitioner therein was convicted in a court having jurisdiction of his person and of the charge in the information, and the judgment and sentence were within the statutory limitations.'"

However, the Court considered the merits of the petition. It is therefore impossible to determine what is dicta and what is the decision upon which the holding was based.

13. The Colorado Supreme Court:

"* * * [S]hall have power to issue writs of habeas corpus, * * * with authority to hear and determine the same. * * *" Colo.Const. art. VI, Section 3.

Jurisdiction is also given by C.R.S.1953, 65–1–1:

"If any person shall be committed or detained for any criminal or supposed criminal matter, it shall be lawful for him to apply to the supreme or district courts, in term time, or any judge thereof in vacation, for a writ of habeas corpus, * * *"

14. See White v. Ragen, 1945, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348. See also the dissenting opinion in Darr v. Burford, 1950, 339 U.S. 200, 229–232, 70 S.Ct. 587, 94 L.Ed. 761.

petitioner's allegations on the merits. If that be the case, then this Court now has jurisdiction, since the constitutional issue needs to be presented to the state high court only once, Brown v. Allen, supra. It may well be that the basis for the decision was either that petitioner had waived his right or that Colorado has no corrective process. In such a case, this Court would then have jurisdiction as stated in the preceding paragraph. Or it may be that the Colorado court rested its decision on the ground that a Colorado District Court is the proper forum in which petitioner should seek a writ of habeas corpus. If that be the case, then this Court lacks jurisdiction if petitioner has an adequate remedy in a Colorado District Court.

In White v. Ragen, 1945, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348, an Illinois state prisoner applied for leave to file an original petition for habeas corpus in the Illinois Supreme Court. Leave was denied without written opinion. The Illinois law clearly stated that original petitions would not be entertained when the allegations of the petition raises questions of fact. At page 767 of 324 U.S., at page 982 of 65 S.Ct. the United States Supreme Court stated:

> "It follows that whenever the Illinois Supreme Court denies a petition for the writ originally filed in that court, without opinion or other indication of the ground of its decision, and when the petition relies on allegations of fact to raise federal questions, it is unnecessary for the petitioner, in order to exhaust his state remedies, to apply to this Court for certiorari to review the judgment of the Supreme Court of Illinois. A denial of certiorari by this Court in such circumstances does not bar an application to a federal District Court for the relief, grounded on federal rights, which the Supreme Court of Illinois has denied. *But any other state remedies, if available, must be exhausted before any application to the federal District Court.*" (Emphasis added.)

In Rogers v. Best, 1946, 115 Colo. 245, 171 P.2d 769, a state prisoner sought an "original writ of habeas corpus." The Court dismissed the action, saying at pages 246–247 of 115 Colo., at page 769 of 171 P.2d:

> "Under rule 116, R.C.P.Colo., we find, 'A party seeking to invoke the original jurisdiction of the supreme court shall set forth in his complaint the circumstances which render it necessary or proper that the supreme court exercise its original jurisdiction. * * *'
>
> \* \* \* \* \* \*
>
> "The 'application' herein is fatally defective in that there is no allegation which sets forth 'the circumstances which render it necessary or proper that the supreme court exercise its original jurisdiction.'
>
> "We have repeatedly held that this court will not exercise original jurisdiction when the question may be properly submitted and determined and the rights of the petitioner fully protected and enforced, in the lower court. * * *"

In Medberry's petition to the Colorado Supreme Court, there appear no allegations of "circumstances which render it necessary or proper that the Supreme Court exercise its original jurisdiction."

In In re Patterson, 1957, 136 Colo. 401, 317 P.2d 1041, the Colorado Supreme Court laid down the procedure to be followed in cases wherein a defendant requests a free transcript on grounds of indigency. In that case, the trial court had appointed counsel to represent the defendant on grounds that the defendant was unable to employ counsel. After a motion for a new trial had been denied, the defendant moved for a free transcript, which motion was denied by the trial court. The defendant then applied to the Colorado Supreme Court in forma pauperis for an order requiring the trial court to furnish a free transcript. The high court remanded to the trial court for a determination of whether defendant was actually unable to pay for a

transcript, saying at page 404 of 136 Colo., at page 1042 of 317 P.2d:

"The trial court should be satisfied that the defendant is not possessed of sufficient means and is actually unable to pay for such record before requiring the transcript or bill of exceptions to be furnished the defendant without cost to him."

■ In the case at bar it is disputed whether Medberry was actually unable to pay for a transcript from his trial in 1939. There was no actual finding by the trial court in 1939—either that petitioner was able to pay or unable to pay for a transcript.[15] Since the Colorado Supreme Court had an adequate non-federal ground on which to base its denial of Medberry's original petition for a writ of habeas corpus (the ground being that the petition did not allege reasons why the Supreme Court should exercise its original jurisdiction and that the question may properly be determined by a Colorado District Court) and since the State of Colorado seems to offer an adequate remedy which Medberry has not exhausted (the procedure laid down in In re Patterson, supra, a procedure which was formulated to conform to the law of the land as laid down by the United States Supreme Court in Griffin v. People of State of Illinois, supra [16]), this Court is disposed to hold

15. It is again to be noted that Medberry was always represented by employed counsel. In the Patterson case, the petitioner was represented by court appointed counsel. Thus, there is a more compelling reason in the case at bar for there to be a finding whether or not Medberry was actually unable to pay for a transcript in 1939.

16. After the United States Supreme Court remanded the Griffin case to the Illinois Supreme Court, the latter court promulgated the following rule, which in part reads:

"(2) Any imprisoned person, sentenced prior to April 23, 1956, may file, on or before March 1, 1957, in the court in which he was convicted, a petition requesting that he be furnished with a stenographic transcript of the proceedings at his trial. The petition shall be verified by the petitioner and shall state:

"(a) the date of his conviction and the charge upon which he was convicted;

"(b) facts showing that he was at the time of his conviction and is at the time of filing the petition without financial means to pay for the cost of a stenographic transcript of the proceedings at his trial;

"(c) the alleged errors which petitioner claims occurred at his trial; and

"(d) that he desires to apply for issuance of a writ of error to review the conviction.

"Notice of the filing of the petition and a copy of the petition shall be served upon the State's Attorney at the time the petition is filed. The State's Attorney may answer the petition within 20 days after service of the petition on him and shall transmit a copy of his answer, if any, to the petitioner. If upon consideration of the petition and answer, the court finds:

"(a) that the petitioner was at the time of his conviction and is at the time of filing the petition without financial means to pay for the cost of a stenographic transcript of the proceedings at his trial, and

"(b) that a stenographic transcript of the proceedings at his trial, (or an appropriate portion thereof), is necessary to present fully the errors recited in the petition, the court shall direct the court reporter to transcribe an original and copy of his notes, in whole or in part, as is appropriate to present fully the errors set forth in the petition, without charge to the defendant. If satisfied as to the accuracy of the transcript, the court shall, irrespective of the provisions of Rule 65 fixing the time for the presentation, certification and filing of reports of proceedings at trials, certify to its correctness. The original of the certified transcript shall be filed with the clerk and the copy transmitted to the petitioner. In the event the court finds that it is impossible to furnish petitioner a stenographic transcript of the proceedings at his trial because of the unavailability of the court reporter who reported the proceedings and the inability of any other court reporter to transcribe the notes of the court reporter who served at the trial, or for any other reason, the court shall deny the petition.

"Thereafter, the petitioner may file in this court or in the Appellate Court, whichever is appropriate, an application for a writ of error to review his conviction. The application shall be verified by petitioner and entitled 'Petition For Writ of Error Under Rule 65-1.' It

that petitioner has further remedies which he must pursue in the Colorado Courts.

Petitioner here vigorously argues that there comes a time when a state prisoner is entitled to be heard in the federal court. He relies heavily on the cases of Robbins v. Green, 1 Cir., 1954, 218 F.2d 192 and United States ex rel. Almeida v. Baldi, 3 Cir., 1952, 195 F.2d 815, 33 A.L. R.2d 1407, certiorari denied 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341, rehearing denied 345 U.S. 946, 73 S.Ct. 828, 97 L.Ed. 1371.

In the Robbins case, petitioner was convicted in 1949 for uttering. He alleged that his constitutional rights were violated during the trial and sentencing. From that time until 1954, he petitioned for habeas corpus many times to both state and federal judges—the state judges denying his petitions without hearing and without opinion, the federal judges dismissing the petitions on ground that he had not exhausted his state remedies. At no time could he secure review by the state high court of a denial of his state petitions, the state high court requiring a transcript and the petitioner being unable to procure one.

Finally, a federal district court took jurisdiction and granted a writ of habeas corpus. The Court of Appeals stated at pages 195–196 of 218 F.2d:

"There comes a point where federal judges in discharge of their present statutory duty are obliged to give a hearing to a convicted state prisoner petitioning for a writ of habeas corpus, however delicate and distasteful the performance of this duty may be—otherwise the petitioner may justifiably have the impression that he is being treated to a grand 'run-around' between the state and federal courts. We think such a point was reached in this case. * * * Finally Green presented to a State court judge a petition, stripped of all the mass of irrelevances which had cluttered up his previous petitions, and stating in clean-cut and unequivocal fashion two allegations of fact, that, if true, would obviously involve serious questions of violation of constitutional right. When Green could not get a hearing on this petition in the State courts, the federal court had to give him one."

shall state (1) the crime charged against petitioner, the verdict, if any, of the jury, the judgment and sentence; and (2) a concise statement of all errors, whether or not stated in the petition for the transcript of the trial proceedings, which petitioner claims occurred at his trial. Copies of the application shall be served as provided for service of petitions under Rule 27, and proof of service shall be filed. The copy served upon the clerk of the trial court shall be accompanied by a *praecipe* designating the portions of the record of the trial court petitioner desires to have incorporated in the record to be reviewed. The clerk of the trial court shall, within 30 days after receipt of the application and *praecipe* and without cost to the petitioner, prepare, certify and forward to the clerk of this court or of the Appellate Court, whichever is appropriate, a copy of the record as requested in the *praecipe*, always including, however, the indictment, information or complaint, the arraignment, plea, and the stenographic proceedings, if any, in respect thereto, the verdict of

the jury, if any, the judgment and sentence, and the original of the transcript of the proceedings at the trial.

"The State's attorney shall file an answer to the petition within 30 days after the copy of the record is required to be transmitted by the clerk of the trial court." Rule 65–2, S.H.A. ch. 110, Sec. 101.65–2. Rule 65–1 relates to persons sentenced after April 23, 1956, the date the decision in Griffin v. People of State of Illinois was rendered.

The Supreme Court of Colorado chose to comply with the Griffin case by court decision rather than by rule. It is not for this Court to say which is the better method, although the rule set out above does seem to be more explicit.

As to whether the provision in the Illinois rule that the petition will be denied when the transcript is not available is valid, see United States ex rel. Westbrook v. Randolph, 7 Cir., 1958, 259 F.2d 215, wherein the Court of Appeals ordered that petitioner be discharged if the state did not hold a new trial within six months.

In the case at bar, petitioner was convicted in 1939. His appeal was decided in 1940. No other court action was commenced until 1958, at which time he petitioned this Court for a writ of habeas corpus. There is no doubt but that at that juncture the Colorado courts had to be given the opportunity to reconsider his case in light of Griffin v. People of State of Illinois, supra, which was decided in 1956. Petitioner then went to the Colorado Supreme Court, which denied his petition without written opinion. In view of the Colorado Supreme Court's decision in In re Patterson, supra, decided in 1957, it can hardly be said that Colorado has had the opportunity to reconsider Medberry's case.

▇▇▇ In the Almeida case, the petitioner first raised the constitutional issues in an original petition to the state high court for a writ of habeas corpus. His petition was denied without written opinion. After certiorari was denied, a federal district court granted the writ. The Court of Appeals said at pages 823–824 of 195 F.2d:

> "The explanation as to why the Supreme Court of Pennsylvania dismissed Almeida's petition for habeas corpus is, we think, a comparatively simple one. It is suggested by the decision of the Supreme Court of Pennsylvania in Commonwealth ex rel. Paylor v. Claudy, 366 Pa. 282, 286–287, 77 A.2d 350, 352–353, where that Court made it plain that the granting of habeas corpus by it as a matter of original jurisdiction under Section 3 of Article 5 of the Constitution of the Commonwealth of Pennsylvania, P.S.Pa., is discretionary with the Court. It follows therefore, and we think the conclusion is almost irresistible, that the Supreme Court of Pennsylvania denied the writ in the exercise of its discretion and did not pass upon the merits of Almeida's application. * * *

> " * * * A refusal of habeas corpus is not res judicata but we are nonetheless of the opinion that no lower Pennsylvania Court could be reasonably expected, in view of the action of the Supreme Court of Pennsylvania and of the Supreme Court of the United States, to grant the writ to Almeida."

This situation is quite analogous to the case at bar, and this Court is tempted to reach the same result here, i. e. to hold that after the Colorado Supreme Court denied his petition without stating the reason petitioner has exhausted his state remedies or that any remedies he might have would be ineffective. It would have been very helpful to a comprehensive consideration of the instant case if the Colorado Supreme Court had seen fit to state the basis or bases for its holding. If the reason or reasons had been stated, then the petitioner would have known in which court to proceed next; and this Court could have acted with definiteness rather than upon surmise. In this field of law, the federal courts and the courts of the State of Colorado have co-ordinate jurisdiction. In order that justice may be rendered in an orderly manner, it is most desirable that the two systems cooperate to the fullest extent possible; and the petitioner should not be placed in the position where he can seriously contend that he has been given the "run-around". The practical problems created by Griffin v. People of State of Illinois and Eskridge v. Washington State Board of Prison Terms and Paroles, supra, are many and are of a grave nature; but they must be resolved and the proper and orderly disposition of each new situation [17] cannot await a definitive answer by the United States Supreme Court.

In view of the Colorado Supreme Court's decisions in Rogers v. Best and In re Patterson, supra, this Court is disposed to hold that Colorado has available corrective process; and, in view of

17. That the situation in the case at bar is new is pointed up by the fact that both parties conceded at the hearing that a transcript cannot now be made since the notes taken at the trial have been lost or destroyed. But see footnote 16, supra.

the United States Supreme Court's strong pronouncement that a denial of certiorari in habeas corpus cases has no substantive significance, United States ex rel. Smith v. Baldi, 1953, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549; Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, this Court also is disposed to hold that the Colorado corrective process will be effective. Although subsequent events may disclose that there is no available corrective process [18] or that such process is ineffective [19], this Court is now without jurisdiction to decide the merits of petitioner's claims. It is now

Ordered that the petition herein be dismissed, the writ of habeas corpus be quashed, and petitioner, Ellsworth Medberry, is hereby remanded to the custody of the respondent, Wayne K. Patterson.

---

18. See footnote 12, supra.

19. The conclusion that was reached in United States ex rel. Almeida v. Baldi, 3 Cir., 1952, 195 F.2d 815, 33 A.L.R.2d 1407.