Annie Bell OTEN and Allan and Anne Price, On Behalf of Themselves and Their Minor Children, Shanna Lee Price and Hanna Christine Price, Plaintiffs-Appellees,

v.

COLORADO BOARD OF SOCIAL SERVICES, Colorado Department of Social Services, George S. Goldstein, In His Official Capacity as Executive Director of the Department of Social Services, and Richard D. Lamm, In His Official Capacity as Governor of the State of Colorado, Defendants-Appellants.

No. 85CA1217

Colorado Court of Appeals, Div. III.

April 9, 1987.

**38**

Kelly, Haglund, Garnsey & Kahn, Edwin S. Kahn, Denver, for plaintiffs-appellees.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wade Livingston, Asst. Atty. Gen., Denver, for defendants-appellants.

CRISWELL, Judge.

The defendants, Colorado Board of Social Services (Board), Colorado Department of Social Services (Department), George S. Goldstein, in his official capacity as executive director of the Department (Director), and the Governor of the State of Colorado (Governor), appeal from the district court judgment awarding plaintiffs attorney fees and costs under the provisions of 42 U.S.C. § 1988 (1982). They assert that such fees were not properly awardable against any of the defendants and that the amount of fees awarded was excessive. We approve the trial court's award of fees, but direct that its judgment be entered against only the Director, rather than against all defendants.

Plaintiffs are persons eligible to receive benefits pursuant to the Low-Income Energy Assistance Program (LEAP), a totally federally funded program designed to help low-income persons pay for utility services. *See* 42 U.S.C. §§ 8621–8629 (1982). In Colorado this program is administered by the Department, under the supervision of the Director, pursuant to eligibility rules adopted by the Board.

The federal statute which governs the payment of LEAP benefits requires, *inter alia,* that:

"[T]he highest level of assistance will be furnished to those households which have the *lowest incomes* and the *highest energy costs* in relation to income, taking into account family size." 42 U.S.C. § 8624(b)(5) (emphasis added).

Prior to the winter of 1983–1984, the LEAP benefits were distributed pursuant to Board rules which provided for payment of a basic benefit to all eligible households and a supplemental benefit payment to households facing exceptionally high utility costs and a consequent utility "shut-off" for non-payment of such costs. For that winter, however, the Board's rules were changed to provide for distribution of basic benefits in accordance with a formula

which did not consider actual utility costs. In addition, as late as June 1984, no program for supplemental benefits had been adopted, so that, as of that date, some 5.4 million dollars had not been distributed to eligible households.

The Legal Aid Society of Metropolitan Denver (LAS), which had a number of clients who were adversely affected by this change in the allocation rules, initiated this litigation against the defendants, naming the Director and the Governor in their official capacities only. The members of only two households, who sought to represent a class of all other eligible LEAP recipients facing utility shut-offs, were named as plaintiffs.

According to the testimony, the litigation was designed to accomplish two purposes: the immediate use of the undistributed funds for persons facing energy emergencies and the adoption of new allocation rules for the future, to be based only upon income levels and actual energy costs, as required by the federal statute.

The complaint ultimately filed by LAS sought only declaratory and prospective equitable relief and contained five claims for relief, which alleged, *inter alia*, that (1) the Board's existing rules failed to provide the highest assistance to those with the lowest income and highest energy costs, as required by 42 U.S.C. § 8624(b)(5); (2) the defendants had violated a second federal statute, prohibiting the transfer of LEAP funds to other social service programs; and (3) these actions deprived plaintiffs of their rights under the constitution and laws in violation of 42 U.S.C. § 1983 (1982).

At a hearing upon plaintiffs' motion for preliminary injunction, the court declined to enter any equitable order, but directed that the parties continue to negotiate. The parties complied with this directive and ultimately two stipulations were executed by the parties and approved by the court.

Under the first, agreed to in August 1984, plaintiffs dismissed their claims based upon the deficiencies in the 1983–1984 program and the alleged improper transfer of funds, and the Board adopted a rule providing for supplemental benefits

for that year. As a result, some 4.7 million dollars were distributed to LEAP recipients facing utility shut-offs because of costs incurred in the 1983–1984 season. The claims relating to the allocation formula for subsequent years, as well as the claim under 42 U.S.C. § 1983, were not affected by this stipulation.

Under the second stipulation, agreed to in January 1985, the Board replaced its former allocation formula by one which considered only a household's poverty level and estimated actual utility costs in determining benefits. Since this rule satisfied plaintiffs' objections to the Board's previous allocation formula, all remaining claims were dismissed, except plaintiffs' claim for attorney fees under 42 U.S.C. § 1988.

A motion for attorney fees was subsequently filed and, based upon the evidence presented during the course of the hearing on this motion, the trial court concluded that attorney fees were assessable against all defendants under 42 U.S.C. § 1988; that plaintiffs were "prevailing parties" for purposes of that statute; that, while they might not have achieved everything they sought, plaintiffs achieved substantial results which far outweighed what they did not achieve; and that, considering the time spent, the hourly rates normally charged for such services, and the results accomplished, a total fee of $42,828.57, which included costs of $955.82, was reasonable. The court therefore entered a judgment in that amount in favor of plaintiffs and against all defendants.

### I.

Plaintiffs' claim to attorney fees is grounded upon the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982). That statute authorizes a trial court, in any action to enforce the provisions of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982), to award a reasonable attorney fees to the "prevailing party." 42 U.S.C. § 1983 creates a claim for relief against any "person" who, acting "under color of any statute ... [or] regulation ... of any State," deprives any other person

"of any rights, privileges, or immunities secured by the Constitution and laws ..."

A suit to enjoin the violation of a federal welfare statute is an action under 42 U.S.C. § 1983 for the violation of rights secured by federal law. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). *See Wright v. City of Roanoke Redevelopment & Housing Authority,* 479 U.S. ——, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In such actions, a litigant is a prevailing party, even in the absence of a trial, if that party obtains some relief through settlement with the opposing party. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

None of the defendants dispute the validity of these principles; nor do they assert that the substance of the claims asserted by plaintiffs were not proper § 1983 claims, if they had been asserted against proper parties. They argue, however, that none of the named defendants were proper parties to this § 1983 action. They assert that neither the Board nor the Department is a "person" within the meaning of § 1983, so that neither entity is a proper defendant. They further argue that neither the Director nor the Governor played any part in adopting the rules or policies about which plaintiffs complained, and thus, neither can be held liable, even in his official capacity, for any violation of § 1983. Defendants assert, therefore, that, since an award of fees under § 1988 is appropriate only against a proper defendant, no fees were awardable here.

We conclude, however, that the Director, in his official capacity, is a proper party defendant to this § 1983 action. Consequently, we need not consider the remainder of defendants' argument upon this subject.

In an official capacity action, such as this one, it is the state, rather than the named individual official, that is the interested party. Hence, the relief granted in such an action runs against the state, provided that it has received adequate notice of the suit and an opportunity to respond. *Brandon*

*v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). An official capacity suit, therefore, is merely "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Nevertheless, for purposes of § 1983, the public official who is made a defendant in such an action is a "person." *Holley v. Lavine,* 529 F.2d 1294 (2d Cir.1976), *cert. denied,* 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976); *Rochester v. White,* 503 F.2d 263 (3rd Cir.1974); *Taliaferro v. Dykstra,* 388 F.Supp. 957 (E.D.Va.1975). Thus, if the plaintiffs prevail, an award of attorney fees under § 1988 is appropriate, because:

"When it passed the [Civil Rights Attorney's Fees Awards Act of 1976], Congress undoubtedly intended ... to authorize fee awards payable by the States when their officials are sued in their official capacities." *Hutto v. Finney, supra.*

■ The nature of the office held is the decisive factor in determining who is a proper party defendant in an official capacity action under § 1983. When, as here, the complaint attacks the validity of a statute, regulation, ordinance, or policy, the executive officer who is primarily responsible for implementing or enforcing its provisions is the proper party defendant in an official capacity suit. *See Pekarsky v. Ariyoshi,* 695 F.2d 352 (9th Cir.1982), *cert. denied,* 464 U.S. 1052, 104 S.Ct. 735, 79 L.Ed.2d 194 (1984) (suit is proper against individual members of state dental board and executive director to challenge procedures for administering dental examinations); *Eslinger v. Thomas,* 476 F.2d 225 (4th Cir.1973) (clerk of state senate proper party defendant in suit challenging senate resolution requiring clerk to deny employment to females); *May v. Cooperman,* 578 F.Supp. 1308 (D.N.J.1984) (commissioner of state department of education proper party defendant in suit challenging state law requiring "moment of silence" for school chil-

dren); *O'Sullivan v. Brier*, 540 F.Supp. 1200 (D.Kan.1982) (secretary of state charged with administering challenged law proper party even though he took no actions to enforce it); *Holy Spirit Ass'n v. Peterson*, 489 F.Supp. 428 (N.D.Ill.1979) (suit against police chief and city attorney to challenge ordinance they were charged with enforcing is proper).

■ ■ Therefore, the fact that the Director had no responsibility for the adoption of the Board rule which plaintiffs challenged does not determine the propriety of his joinder as a defendant. Rather, the question is whether his position required him to implement or to enforce that rule. A review of the pertinent statutes discloses that he was required to under take such responsibility.

Both the Department and the office of the Director were created by § 24–1–120(1), C.R.S. (1986 Cum.Supp.). By this statute, the Director is designated as the "head" of the Department.

The Department is the state agency designated to administer the federal assistance program involved here. Section 26–1–109, C.R.S. (1982 Repl.Vol. 11). Indeed, it is charged with administration and supervision of all public assistance and welfare programs. Section 26–1–111(1), C.R.S. (1982 Repl.Vol. 11). For these purposes, the Board is given the responsibility for adopting rules and regulations governing, *inter alia*, the requirements, obligations, and rights of the recipients of these programs. Section 26–1–108(1)(b), C.R.S. (1982 Repl.Vol. 11).

Thus, as head of the Department, the Director is primarily responsible for administering and supervising the LEAP program in accordance with the rules adopted by the Board and is responsible for promulgating rules and regulations relating to matters of internal administration of the Department. Section 26–1–108(1)(a), C.R.S. (1982 Repl.Vol. 11). He is, therefore, a proper party to be sued, in his official capacity, in an action contesting the validity of these rules.

Indeed, there have been many cases in which similar officials have been sued in their official capacities. *See Blum v. Stenson, supra* (state commissioner of department of social services); *Maine v. Thiboutot, supra* (state commissioner of human services); *Maher v. Gagne, supra* (state commissioner of welfare); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (state officials in charge of administering a federal aid program); *Holley v. Lavine, supra* (state commissioner of social services department); *Rochester v. White, supra* (state director of department of social services).

We conclude, therefore, that plaintiffs' suit was properly instituted against the Director, in his official capacity, as a "person" within the meaning of § 1983. Thus, attorney fees were properly awardable under the provisions of § 1988 against him in that capacity.

■ Moreover, the State of Colorado had adequate notice of this action and actually defended against plaintiffs' claims through its Attorney General; thus, the State, even though not joined as a party, is liable for the judgment entered against the Director. *Brandon v. Holt, supra; Hutto v. Finney, supra; Glover v. Alabama Dept. of Corrections*, 734 F.2d 691 (11th Cir.1984). *See also* § 24–10–110(1), C.R.S. (1982 Repl.Vol. 10). Consequently, the issue whether the other defendants were also proper parties is rendered moot, and since there is no necessity for the entry of more than one judgment against a single proper defendant in order to enforce the State's liability, we shall remand this matter to the trial court with directions to vacate the judgment awarding attorney fees against the other defendants.

II.

Defendants also argue that the trial court's award of fees was excessive because fees were granted for time spent on a matter upon which plaintiffs did not prevail and with persons who were not parties to the action. We disagree.

A.

■ While there may be other standards to be utilized under other circumstances, the methods required to be used to determine appropriate attorney fees under

§ 1988 have been outlined by the United States Supreme Court in *Blum v. Stenson, supra; Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); and *Maher v. Gagne, supra.*

Under the principles there established, the court must first consider the actual number of hours reasonably expended by counsel and reasonable hourly rates for the services rendered. In determining reasonable hourly rates, the court should consider numerous matters, including the complexity of the issues involved and the expertise of counsel. Once a basic amount is ascertained by considering these two factors, that amount may be adjusted by considering the nature and the degree of the success achieved by plaintiffs. However, any fees to be awarded are not to be reduced merely because counsel is employed by a non-profit organization, such as LAS.

If the plaintiffs do not prevail on all of their claims, the court must take this factor into account. If an unsuccessful claim was totally unrelated to the ones upon which plaintiffs prevailed, the court must treat the matters separately and insure that the fee awarded compensates only for services rendered on the successful claims.

If, on the other hand, the unsuccessful claim involves a "common core of facts" or "related legal theories," the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the [entire] litigation." *Hensley v. Eckerhart, supra.* If the relief obtained justifies a fee based on the total hours reasonably expended, the fact that all of the relief requested was not obtained will not require the amount of the fee to be reduced. No reduction is required unless the unsuccessful claim represents a "substantial separate issue." *See Duran v. Lamm,* 644 P.2d 66 (Colo.App.1981). If the court determines that some reduction is warranted, it may either identify the hours expended on the unsuccessful claim or, in the alternative, merely reduce the total fee by an appropriate amount to reflect the lack of success. *Hensley, supra.*

In this case, the claims upon which plaintiffs prevailed related to the distribution of some 5.4 million dollars in supplemental benefits and to the criteria to be used in distributing all such similar funds in the future. The claim which they did not settle favorably was based upon an alleged illegal transfer of some $200,000 to $300,000 in benefit funds. Testimony at the attorney fees hearing indicated that this claim was dismissed as part of the consideration given to obtain a favorable settlement of the major claim. Thus, it might well be concluded that the prosecution and settlement of this claim was a direct contributing factor to the settlement of the major claim.

Further, the trial court, which was familiar with the substance of both claims and the effort expended by counsel on each, found that what plaintiffs had achieved far outweighed what they did not achieve. That court, while it reduced the total fee requested by plaintiffs by assessing lesser hourly rates, made no further reduction because of their failure to achieve any direct benefit under their other claim.

Because the unsuccessful claim was of considerably less significance than the plaintiffs' principal claims, because its dismissal was used as a negotiating consideration in settling the substantially larger claim, and because counsel's time spent upon this claim, as compared to the total time expended by counsel was, if not *de minimis,* certainly only a minor part of counsel's work, we cannot say that the trial court violated the mandated guidelines or otherwise abused its discretion in not further reducing the amount of fees awarded.

**B.**

■ Nor do we agree with defendants that the trial court abused its discretion or otherwise committed reversible error in awarding fees for the time spent by LAS's attorneys in conferring with persons who were recipients of LEAP benefits and beneficiaries of the proceeds paid under the negotiated program for 1983–1984, but who were not named plaintiffs.

Testimony disclosed that a number of LAS's clients were affected by the Board's failure to adopt supplemental benefit rules. While only two households were named as plaintiffs in the litigation, the complaint

sought to have the action certified as a class action, on behalf of the thousands of LEAP benefit recipients who were then facing utility shut-offs. However, the parties settled the litigation before the court took any final action on plaintiffs' class certification request.

After the initial settlement, which caused a sum in excess of 4.5 million dollars to be distributed to thousands of recipients, LAS attorneys conferred with several of these recipients to advise them of the procedures necessary to obtain the settlement benefits. Plaintiffs then sought to recover, and the trial court awarded to them, a fee, computed at the hourly rate for a paralegal, for the time spent in such counseling sessions. Of the nearly $43,000 awarded by the trial court, the fees for these services amounted to no more than $5,500.

While there was no formal certification of the class, there is no question that, as matter of law, this action could properly have been so certified under C.R.C.P 23(b)(2). *See generally* 3B *Moore's Federal Practice* § 23.40 at 23–285 through 23–313. Moreover, the relief obtained was of direct financial benefit to the very persons whom plaintiffs sought to represent by means of a C.R.C.P. 23 lawsuit.

By concluding that the time spent with members of the proposed class was reasonably related to the purpose of the litigation, the trial court approved, at least tacitly, plaintiffs' class allegations. Under the circumstances portrayed by this record, we can find no error in such action.

For the foregoing reasons, the judgment against the Director in his official capacity is affirmed. However, since our affirmance of the judgment against the Director renders moot the issue of the liability of the other defendants, this matter is remanded to the trial court with directions to vacate the judgments for attorney fees against the other defendants.

VAN CISE and TURSI, JJ., concur.